[No. 25828. Department Two. December 10, 1935.]

PHYLLIS M. PEARSON, *Individually and as Administratrix, Respondent and Cross-appellant,* v. FRED W. PICHT *et al., Appellants.*[1]

[1]Reported in 52 P. (2d) 314.

*Ballinger, Hutson & Boldt,* for appellants.

*Geo. H. Crandell,* for respondent and cross-appellant.

MAIN, J.—The purpose of this action was to recover damages that resulted from an automobile accident, and the cause was tried to the court without a jury. The action was brought by Phyllis M. Pearson in her own behalf and as administratrix of the estate of her deceased husband.

In the complaint, there were three causes of action, separately stated. In the first, damages were sought for the pain and suffering which the deceased endured after the accident and prior to his death. Upon this cause of action, the court allowed one thousand dollars as damages for pain and suffering, and $561.75 for expenditures for doctor's services and hospital charges. The second cause of action was for the loss sustained by reason of the death of the plaintiff's husband. Upon this cause of action, the court awarded damages for the death in the sum of fifteen hundred dollars, and four hundred dollars for funeral expenses. The third cause of action was for the injuries sustained by the plaintiff individually, and upon this cause of action the plaintiff was awarded one thousand dollars for her injuries, and $134.50 for doctor's services.

From the judgment entered in accordance with the findings and conclusions, as above indicated, the defendants appeal, and the plaintiff cross-appeals upon the amount of damages allowed in the second and third causes of action. There is no question here over the amount of the first.

The accident happened July 14, 1934, at about 10:30 o'clock p. m., at or near the northwest corner of the intersection of Phinney avenue with North 49th street, in the city of Seattle. The next street north of 49th street, and parallel therewith, is North 50th street. Phinney avenue runs in a general northerly and southerly direction, and the other two streets easterly and westerly. At the intersection of North 50th street with Phinney avenue, the latter avenue, as you go north, bends to the west for a short distance and makes a curve or bend. Upon Phinney avenue, there are double streetcar tracks.

David McMullen and Margaret McMullen, his wife, the father and mother of Mrs. Pearson, reside at the northwest corner of the intersection of Phinney avenue with North 49th street. Mr. and Mrs. Pearson had spent the evening prior to the accident at the home of her parents. Shortly before the accident, they left for the purpose of going to their home, and before boarding the streetcar, which was approaching from the north, they were struck by an automobile owned by Fred W. Picht and driven by him at the time, and Mr. Pearson sustained injuries from which he died a little less than twenty-four hours thereafter, and Mrs. Pearson sustained injuries for which she sought recovery.

The evidence is in direct dispute as to whether, at the time they were struck, they were in the act of moving from the curb across that side of the street to reach a place to take the streetcar, or whether they were standing in the street waiting for the car. Picht predicates his appeal upon the contention that they were moving suddenly from the curb to the place where they would take the streetcar, while the theory of Mrs. Pearson is that they were standing in the street waiting, she at the time having in her arms their fourteen-months-old baby.

The motorman upon the streetcar testified that he saw them standing in the street at the usual place where he stopped to receive and discharge passengers, when he was a hundred or more feet away, without the aid of the headlight upon the streetcar, and that, in order to receive them, he gradually slowed down as he approached. Two disinterested witnesses, that were standing at or near the northwest corner of North 49th street and Phinney avenue, testified that, as they approached going north, they saw Mr. and Mrs. Pearson standing in the street waiting for the streetcar.

The evidence is in dispute as to the exact point where the accident occurred. The witnesses called by Picht placed it farther north of the intersection than did the witnesses for the other side. The accident occurred after the automobile had passed the streetcar for a space of about ten feet.

For the purposes of this decision, it will be admitted that Mr. and Mrs. Pearson were standing from six to ten feet north of what would be the crosswalk on the north side of the intersection of North 49th street with Phinney avenue. The ordinance of the city provided that every pedestrian, except while boarding or alighting from a streetcar, should yield the right of way to vehicles upon the roadway from any point other than a marked or unmarked crosswalk or other place especially provided for pedestrians, and that persons waiting for streetcars shall not step into the street sooner than is necessary. Even though there was a technical violation of this ordinance, and Mr. and Mrs. Pearson were negligent in that regard, it does not follow that no recovery can be had in this case.

Picht testified that, if Mr. and Mrs. Pearson had been standing in the street waiting for the streetcar, they would have been visible to him at one hundred or

one hundred fifty feet easily. His testimony, as abstracted upon this point, is as follows:

"If there had been anyone standing at or near the intersection of North 49th in the street I could have seen them and I could have seen them when I was over half a block away if they had been in the street. I could have seen them quite a distance. On the night of the accident as I was going south on Phinney Avenue from North 50th prior to the time of the impact, if there had been some person or persons standing on the pavement in the street at or near the corner of North 49th they would have been visible to me at one hundred or one hundred fifty feet easily."

This branch of the case turns upon the question of whether Mr. and Mrs. Pearson were standing in the street or crossing from the curb at the time of the impact. As already stated, the evidence upon this question is in conflict. Three persons, including the motorman on the streetcar, all of whom were disinterested and who saw the accident, testified unequivocally that Mr. and Mrs. Pearson were standing in the street. The trial court found that Mr. and Mrs. Pearson had

". . . proceeded to a point north of the northwest corner of the said intersection of Phinney Avenue and North 49th Street near the car tracks. That plaintiff and her husband stood at said place prepared to board the street car. That at said time and place a southbound Phinney Avenue street car was approaching the plaintiff and her said husband along the southbound car tracks from a point near the intersection of North 50th Street and Phinney Avenue. That immediately after rounding the jog or curve at North 50th Street and Phinney Avenue the motorman of said street car observed the plaintiff and her said husband standing in the street preparatory to boarding the said street car at a point where the said motorman usually stopped for passengers to board his car."

If, as the court found and the preponderance of the evidence shows, Mr. and Mrs. Pearson were

standing in the street waiting to board the streetcar, even though it be assumed that they were technically negligent in failing to be at the exact point fixed by the ordinance, that fact did not materially contribute to the accident, because, if Picht, as he testified, could have seen them if they had been standing in the street, the exact point where they were was not material. Upon this branch of the case, we conclude that Mr. and Mrs. Pearson were not guilty of contributory negligence, either as a matter of law or a matter of fact.

The case of *Price v. Gabel,* 162 Wash. 275, 298 Pac. 444, which Picht in his brief says is "a case which on its facts and in principle very closely resembles the case at bar," is plainly distinguishable. In that case, a photographer set his camera in the middle of a busy street in the city of Chehalis to take a picture, and, while there, was struck by an automobile backing out of an adjacent garage. We see no analogy between the facts of that case and the facts now before us.

We shall now consider the cross-appeal, giving attention first to cause of action No. 2, which was for the loss sustained by the death of Mr. Pearson and for which, as above indicated, the trial court awarded the sum of fifteen hundred dollars.

Rem. Rev. Stat., § 183 [P. C. § 8259], provides that, when the death of a person is caused by the wrongful act of another, his personal representative may maintain an action for damages against the person causing the death. Section 183-1 [P. C. § 8260], provides that every such action shall be brought for the benefit of the wife, husband, child or children of the person whose death shall have been so caused.

Mr. Pearson, at the time of his death, was twenty-seven years of age and had a life expectancy of a little more than thirty-seven years. He was employed at the

time at a salary of eighty dollars per month, but had secured new employment at $160 per month.

In considering the amount of damages to be allowed where death has occurred by the wrongful act of another, the trier of the facts, the court or the jury as the case may be, should take into consideration, not alone the pecuniary value of the wage earning abilities of the deceased, but also the value of his daily services, attention and care bestowed on his family, and the loss of comforts, conveniences and of education suffered by minor children, but no damages by way of solace to the affections of the wife and children should be allowed. The court may take note and give consideration to the award of compensation allowed by juries in similar cases.

In the case of *Drowne v. Great Lakes Transit Corp.*, 5 F. (2d) 58, the deceased was forty years of age, was earning eighteen hundred dollars per year, and at the time of his death had a life expectancy of twenty-five years. He left surviving him a widow. The trial court awarded damages in the sum of $13,500. The circuit court of appeals raised this to fifteen thousand dollars. In the course of the opinion, it was said:

"These are many elements that enter into the assessment of damages for the wrong resulting in loss of life. The deceased's age, his earning capacity, his dependents and their ages, his condition of health, his prospect of advancement in position and employment, are all elements to be considered. His contribution to his family is an important factor. . . . Of course, his life might not have been spared during this full life's expectancy. He might have become sick or infirm. But with good health and a useful life in prospect, we think the award below was insufficient. We must take note of juries' award of compensation as some guide to control us in the decision of this question of fact."

In the case of *Walker v. McNeill,* 17 Wash. 582, 50 Pac. 518, for wrongful death, the jury had awarded

the wife and minor children forty thousand dollars. Upon appeal, the plaintiff was required to elect to take twenty-five thousand dollars, or a reduction of fifteen thousand dollars, or the court would grant a new trial on the ground of excessive damages.

Of course, in determining the amount of the damages to be allowed as just compensation, every case must depend largely upon its own facts, taking into consideration the elements to be considered already pointed out. We think the award allowed by the trial court in the case now before us for the loss sustained by Mrs. Pearson and her child by reason of the death of Mr. Pearson was inadequate, and, in our opinion, the judgment should be for $11,500.

Upon the third cause of action, which was for Mrs. Pearson's injuries, the court allowed one thousand dollars. The trial court found that, as a result of the accident,

" . . . the plaintiff sustained numerous bruises about her body, a broken nose, a spraining and wrenching of the vertebrae and muscles of the lower lumbar region and great shock to her nervous system, causing severe, constant pains in her head and back, loss of sleep, loss of weight, to-wit: fifteen pounds, and loss of sense of smell, all of which she still suffers and from which she will continue to suffer for a long time."

This finding as to the extent of the injuries is in accord with the evidence.

In the case of *Knight v. Duggan,* 163 Wash. 107, 299 Pac. 986, where the injuries to the plaintiff were no greater than those in the case now before us, the trial court awarded twelve hundred dollars, and upon appeal, this was increased to twenty-five hundred dollars. A like amount should be allowed in this case as compensation for the injuries sustained by Mrs. Pearson.

In the second cause of action, judgment should be entered for $11,500, plus the four hundred dollars expended for funeral expenses, or a total of $11,900. Upon the third cause of action, judgment should be entered for twenty-five hundred dollars for the injuries sustained by Mrs. Pearson, plus the $134.50 physician's charges, or a total of $2,634.50.

Upon the appeal of Picht and wife, the judgment will be affirmed. Upon the cross-appeal by Mrs. Pearson upon the second and third causes of action, the judgment will be reversed, and the cause remanded with direction to enter a judgment upon these causes of action in the amounts hereinabove indicated.

TOLMAN, HOLCOMB, BEALS, and BLAKE, JJ., concur.