[No. 26223. Department Two. November 30, 1936.]

Lois McCoy Olson, *as Administratrix, Respondent and Cross-appellant,* v. King County, *Appellant.*

K. S. Conley, *as Administrator, et al., Appellants,* v. King County, *Respondent.*[1]

*Warren G. Magnuson, David J. Williams, Edwin C. Ewing,* and *Patrick M. Tammany,* for King county.

*Ballinger, Clark, Mathewson & Force,* for appellants Conley.

*Roberts & Skeel* and *Frank Hunter,* for respondent and cross-appellant.

Tolman, J.—These consolidated cases (each of which sought recovery for wrongful death), were tried to the court, sitting without a jury, resulting in findings of fact upholding the allegations of negligence on the part of the defendant county and negativing the defense of contributory negligence. In the Conley case, the court found that there was no dependency and

[1]Reported in 62 P. (2d) 719.

entered a judgment against the county for the amount of the funeral expenses only. In the Olson case, a judgment for $6,400 was awarded to the plaintiff.

The county has appealed from both judgments, and each plaintiff has cross-appealed, complaining of the inadequacy of the amount awarded.

The appellant county, by its assignments of error, questions most of the vital findings of fact and seems to contend that the proof is sufficient to show no negligence upon its part and to establish contributory negligence upon the part of the driver of the automobile involved.

The findings made by the trial court are concise, cover every vital point involved, and present a sufficient picture. We quote, so far as material:

"That for a number of years prior to the accident hereinafter mentioned 47th Avenue Southwest was a public street and thoroughfare within the city limits of Seattle, Washington, and south beyond said city limits said avenue continued in King County, Washington, as a highway adapted to automobile and vehicular traffic, and on or about February 24, 1925, said continuation of said 47th Avenue Southwest became a dedicated highway and thereafter it was kept and maintained by the defendant county in a good state of repair for vehicular and automobile traffic and was by the public so used.

"That thereafter to-wit: May 1, 1933, by a decree of the superior court of King County, Washington, the county commissioners of said county were permanently enjoined from opening up, repairing or improving said highway south and beyond the point hereinafter referred to for convenience as 'point of barricade', but its dedication has never been revoked and it was at all times herein mentioned a regularly dedicated public King County highway.

"That in general said highway is a scenic drive following the contours of the hills bordering Puget Sound, and beyond the point of barricade was in the

nature of a shelf road curving around a hill and about 300 feet above the Sound.

"That on September 24, 1934, and for a long time prior thereto various private roads leading to residences along the Sound branched off from said highway and near the point of barricade also there was a private road, the entrance to which was somewhat concealed by brush and turning back at a sharp angle from the direction of the highway likewise led to residences along the Sound, but approaching this point and looking southward in the direction of travel the highway itself in the absence of a barricade gave the appearance of a good surface road first curving to the right and then within another 200 feet disappearing in a curve to the left around the point of the hill, whereas in fact, begining some time in 1933 in said highway at the curve last mentioned there was a gully extending at an angle across said road toward the mountainside, and beyond the flume and around the curve the shoulder had been washed away and beyond that the slides had practically obliterated the road.

"That about midnight, September 24, 1934, said Olaf Anker Olson and Lela Conley English met death while riding in a 1933 Chevrolet sedan belonging to said Olson, who was at the time driving the same; that said automobile was in good repair and properly equipped and in the absence of any warning, barricade or barrier entered upon said highway at the point of barricade, when, having proceeded less than 200 feet, suddenly and without notice that which was apparently a travelled road became no road because of washouts, lack of surface and shoulder capable of supporting an automobile, and by reason thereof said automobile rolled down the hillside. That said deceased persons were alone in said automobile, which, while proceeding south on 47th Avenue Southwest, just beyond the city limits of Seattle and in King County, Washington, left said road and rolled over and over for approximately 250 feet down a steep and precipitous hillside, fatally injuring both occupants and coming to rest along the shores of Puget Sound. That there were no eye witnesses to the accident and neither of the occupants of the car was able to make

any statement in regard to what happened, death in each instance following shortly thereafter. That the deceased Olson in said accident sustained a ruptured spleen, internal, back and body injuries, causing him to suffer excruciating pain during the day he survived the accident, and the deceased English died almost immediately from a fractured skull.

"That at the time of said accident there was no warning or barrier placed across the continuation of 47th Avenue Southwest of the defendant county, or otherwise, to warn drivers of the danger ahead, and the absence of such a warning or barricade constituted a dangerous trap.

"That without a barricade or warning the situation was such that an ordinarily careful and prudent driver would be invited to proceed on his way south, expecting that the road made just another curve around a hill. Defendant's engineers admitted that a dangerous situation existed at the point of this accident necessitating a barrier or barricade, and it is to be noted that two other persons, namely, a state highway patrol officer and another, an ambulance driver, guided by appearances, assumed the existence of a continuation of the road to the south beyond the point of barricade. Plaintiff's picture, Exhibit 13, shows the situation at the time of the accident, except that a tree stump and a plank were placed at the point of barricade subsequent to the accident.

"The defendant county placed numerous barricades across 47th Avenue Southwest continuation, at the point of barricade, through a period of time extending for a year preceding the accident and according to the defense evidence these several barricades were torn down by persons unknown. The present barricade was not placed there, however, until after September 24, 1934. The fact that the defendant county had knowledge of their being torn down, one after the other, was sufficient to inform the defendant that in order to prevent serious damage and loss of life it was necessary to place some substantial and permanent barrier or barricade to warn travellers of the dangerous condition existing.

"It is undisputed that to the south beyond the scene

of accident there is a gravel pit and also a beach used by picnic parties, and that up to the time of said accident automobile drivers were accustomed to pass beyond the point of barricade and park their cars on said road continuation.

"That there was no guard, barricade or barrier at the point of barricade, or otherwise or at all, for a considerable period of time prior to August 10, 1934, until the occurrence of this accident, and the fact that the continuation of 47th Avenue Southwest at the point in question was an extremely dangerous highway was both actually and constructively known to be so by the defendant, and at the time of said accident the defendant was negligent in failing to protect the public, including said deceased persons, from driving thereon, although said highway at that point gave every appearance of being an open highway and that the public was thereby invited to enter thereon. That the negligence of the county was the sole proximate cause of the fatal injuries to said deceased persons.

"That the defendant has not sustained the burden of proof of its alleged affirmative defense of contributory negligence.

"That at the time of his death Olaf Anker Olson was in good health, 33 years of age, with a life expectancy of 33.21 years, earning $275 per month besides other income, and was the means of support and maintenance of his wife and children, of which they have been deprived by his death; that his administratrix has necessarily incurred medical and funeral expenses on account of his death in the sum of $750 and that the 1933 Chevrolet sedan which was totally demolished in said accident, was worth the sum of $650.

"The court finds that Lela Conley English at the time of said accident was riding in said automobile as an invited passenger; that she was of the age of about 30 years; that she had been living in Seattle for only a few weeks. Eva Harland Conley, the mother of Lela Conley English, deceased, testified for the purpose of showing that she, the mother, was dependent for her support on Lela Conley English during the lifetime of the deceased. Notwithstanding that the records the deceased had in times past contributed in part to the

support of her mother, yet at the time of the death of her daughter such was not the case, according to the record. The evidence shows that on September 24, 1934, the mother was living with her son in Seattle and that she had several other sons and a husband. The evidence further shows that the night that Lela Conley English lost her life she had been looking for a position as a maid in which the wages were to be $20 a month and board and room. There is no evidence in this record of dependency sufficient to justify a judgment in favor of the plaintiffs in cause No. 277871 and against the defendant King County on the ground of dependency. Plaintiffs Conley are entitled to recover funeral expenses paid in the sum of $157.00 together with their costs & disbursements.''

We have read and carefully weighed all of the evidence disclosed by the record and are fully convinced that upon no material point does the evidence preponderate against the findings as made.

Therefore, upon the county's appeal and the cross-appeal of the plaintiff Conley the judgment must be affirmed.

The Olson cross-appeal presents a question which has been recently considered by this court in the case of *Pearson v. Picht,* 184 Wash. 607, 52 P. (2d) 314. It is unnecessary to repeat what is there said regarding the different elements to be considered in fixing the amount of damages in such a case as this. Everything there said is equally applicable here. Mr. Olson lacked some two months of being thirty-four years of age, he left surviving him a dependent widow and two minor children, a daughter about nine years of age and a subnormal son about three years of age. He was earning $275 per month at the time of his death, had in good times earned much more and, presumably, might in the future earn more, and there is no reason to suppose that he was other than a considerate and devoted husband and father. The cross-

appellant asks that the amount of the general damages be doubled and, under the authority of *Pearson v. Picht, supra,* we can do no other than comply with that request.

On the Olson cross-appeal, the judgment will be reversed with directions to enter judgment against King County for $11,400.

MILLARD, C. J., HOLCOMB, and MITCHELL, JJ., concur.

BEALS, J. (dissenting)—In my opinion, no negligence on the part of King county was shown, and I accordingly dissent.