[No. 29648. Department One. August 9, 1945.]

ROBERT DYAL et al., Appellants, v. FIRE COMPANIES ADJUSTMENT BUREAU, INC., et al., Respondents.[1]

[1]Reported in 161 P. (2d) 321.

516

*J. P. Tonkoff,* for appellants.

*Skeel; McKelvy, Henke, Evenson & Uhlmann,* for respondents.

STEINERT, J.—This was an action, brought jointly by two sets of plaintiffs, to recover damages for personal injuries and property loss resulting from an automobile collision. The action was tried before the court without a jury. The

court made findings of fact, drew conclusions of law, and entered judgment in separate specified amounts in favor of the respective sets of plaintiffs. Deeming themselves aggrieved by the alleged paucity of the amounts awarded to them, the plaintiffs appealed. The two plaintiffs who were immediately affected by the collision, Anne Dyal and Dorothy Crawford, will hereinafter be referred to as though they were the sole appellants.

At the time of the accident here involved, Mrs. Dyal, accompanied by Mrs. Crawford, was driving her 1940 V8 Ford coupe automobile northwardly along the highway between Yakima and Ellensburg. At the same time, respondent Ralph B. Sinclair, an employee of the respondent Fire Companies Adjustment Bureau, Inc., while in the course of his employment was driving his automobile along the highway in a southerly direction.

It is conceded that Sinclair operated his automobile in a negligent manner, causing it to veer completely over onto his left-hand side of the road and collide head on with the Dyal coupe. In consequence of the impact, the coupe was hurled backward, off its right-hand side of the highway, over an embankment and into a twelve-foot ditch, inflicting the personal injuries and causing the property loss and damage hereinafter described. The only question involved upon the appeal is the sufficiency of the amounts allowed by the trial court to the appellants for the injuries and damages sustained by them.

Mrs. Dyal was approximately twenty-eight years of age; she was a graduate of a beauty school and had been a licensed operator for ten or twelve years. During that period she had also for a time attended a school for modeling, fashioning, and photography, and had done some modeling work. Just prior to the day of the accident she had been working part time as a beautician, earning about one hundred twenty-five dollars a month.

With respect to her personal injuries she testified substantially as follows: She sustained a compound fracture of the patella of her right knee; the fracture of several ribs; a fracture of her upper jaw, loosening her front teeth; and

a laceration over the left area of her nose. She was confined in a hospital for three weeks, and during that time was placed in a cast extending from midthigh to foot. She was then taken home where she remained, with the cast in place, for about five weeks, during which time she was attended by a nurse. In September, she suffered a nervous breakdown owing to the fact that adhesions had formed in her knee, and she thereupon consulted an orthopedic specialist in Seattle. The specialist removed the cast and, throughout a period of several weeks, gave her manipulative treatments which, because of the intense pain, were performed under an anesthesia. Thereafter she walked on crutches for two or three weeks, and then with a cane for about the same length of time. Her doctors' bills amounted to $170; her hospital bill was in the sum of $185.05; and it was stipulated that she incurred nurse expense to the extent of $250.

The orthopedic specialist testified, by deposition given about a month before the trial, that, although there was then still some slight restriction in the amount of flexion in her knee, she had practically normal function; that there was no permanent injury to the knee; and that so far as her leg was concerned she was then nearly ready to return to work. The general physician testified that Mrs. Dyal was still quite nervous, for which he was giving her sedatives and hormones. Mrs. Dyal also testified that her teeth had since tightened and that aside from her nervousness and some ache in her knee she felt "quite well."

With respect to her property loss and damage, Mrs. Dyal testified that, as a result of the collision, her Ford coupe had been damaged to the extent of seven hundred fifty dollars; and that certain wearing apparel, a wrist watch, eyeglasses, gloves, and a portable radio-phonograph with records, had either been damaged or lost, aggregating in value $334.59.

At the trial, Mrs. Dyal exhibited the injured members of her body, and the court later made a formal finding that

none of her personal injuries was permanent. The court made a further finding of damages itemized as follows:

Loss of time ..........................$750.00
Ambulances ........................... 11.75
Glasses ............................... 20.00
Personal property loss.................. 200.00
Doctors' bills .......................... 170.00
Hospital bill ........................... 185.05
Home care by nurse..................... 250.00
Pain and suffering..................... 750.00
Damage to automobile.................. 750.00
Damage to radio-phonograph........... 75.00

$3,161.80

It will be observed that the court allowed the full amount, as testified to by Mrs. Dyal, for doctors' and hospital bills, nurse care, and damage to the automobile. The full amount expended for ambulance charges was also allowed. The amount awarded by the court for loss or damage to personal property, such as wearing apparel, etc., was $39.59 less than what she asked for. That was undoubtedly due to the fact that the amounts fixed by Mrs. Dyal for most of those items were the original cost prices.

We turn now to Mrs. Crawford's case. Prior to the day of the accident she had been a barmaid working at times in her husband's tavern at a weekly salary of $36.75 and was earning an average amount of eighty or ninety dollars a month. She weighed about one hundred twenty-four pounds.

With respect to her personal injuries, she testified as follows: She was thrown out of the coupe, striking her elbows, back, and head upon some rocks lying in the ditch on the right-hand side of the road. Both of her elbows and one leg were lacerated; the upper part of her mouth was fractured, eventually requiring the extraction of two front teeth and the substitution of a partial plate; her right cheek was cut, leaving a scar; the blow upon the side of her head has caused recurrent headaches and twitching of one of her eyelids. She was confined in a hospital for one week and after her release remained in bed at home for

two weeks.   In October she suffered a nervous breakdown and was confined to her bed for a month.   Since then, she has been extremely nervous and has not been able to work regularly.   She has lost weight to the extent of about fifteen pounds, and she is now under medical care for her nervous condition.   Her doctors' bills amounted to seventy-two dollars, and her hospital bill $38.95.

The doctor who first attended her testified that he had sutured her right cheek and had taken some X-ray pictures but found no fractures, and that, when she was sent home from the hospital, he was satisfied that her injuries were not "too extensive" except such as "were obvious on the outside."   He further testified that there would always be some scar on her face, but that it could be improved through plastic work; and that, although she was very nervous at the time he treated her, her nervous condition was not abnormal when he last saw her, two or three weeks after the accident.   The physician who attended her later did not testify.

With respect to her property loss and damage, Mrs. Crawford testified that she lost her eyeglasses, valued at $20.60; and that sundry articles of wearing apparel, such as slacks, sport shirt, dresses, shoes, purse, and overnight bag were either ruined or lost.   The value placed by her on all the personal property amounted to one hundred thirty-six dollars; and the partial plate supplying two teeth cost one hundred twenty-five dollars.

At the trial Mrs. Crawford exhibited her physical injuries, and the court later made a finding that those injuries consisted of the "loss of two teeth, a cut on the upper cheek on the right side of her face resulting in a small scar which is not disfiguring, with some disturbance of her nervous system, and bruises and contusions."   The court made a further finding of damages, itemized as follows:

| | |
|---|---:|
| Loss of two teeth | $250.00 |
| Loss of time | 480.00 |
| Scar on face | 100.00 |
| Glasses | 20.60 |

Miscellaneous items of personal property
lost or damaged.....................$ 80.00
Ambulance ............................  3.75
Doctor bills ..........................  62.00
Hospital bill ..........................  38.95
Partial plate ..........................  125.00
Pain and suffering......................  500.00

$1,660.30

Again it will be observed that the court allowed the full amount, as testified to by Mrs. Crawford, for her hospital bill and her eyeglasses. The amount allowed for her doctors' bills was sixty-two dollars, instead of seventy-two dollars as testified to by her; this apparently was simply a mistake in the addition of two amounts, and will be adverted to for correction a little later. The amount allowed by the trial court for loss or damage to personal property, such as wearing apparel, etc., was thirty-six dollars less than what she asked for. That, too, was undoubtedly due to the fact that the amounts fixed by Mrs. Crawford for a number of those items were on the basis of the original cost prices.

The measure of damages in tort actions is that indemnity which will afford an adequate compensation to a person for the loss suffered or the injury sustained by him or her. A corollary to that principle is that the damages recoverable must be such as are the direct, natural, and proximate consequences of the wrongful act or omission, and such as are established with reasonable certainty. In the very nature of things, damages with respect to property are more susceptible of definite ascertainment than are damages for personal injuries. Necessarily, there can be no exact standard by which damages for physical injuries can be measured. For such injuries the measure of damages, broadly stated, is such a sum, in so far as it is susceptible of estimate in money, as will compensate the injured person for all losses which he or she has sustained as the natural and proximate consequences of the wrongful act or omission and which are established with reasonable certainty, and includes compensation for pain and suffering,

loss of time, medical attention and support during the period of disablement, and for such permanent injury and continuing disability as the injured person may have sustained. 25 C. J. S. 589, Damages, § 81. The question is therefore one for the trier of fact, usually a jury, to determine from all the facts and circumstances of the particular case. *Barney v. Anderson,* 116 Wash. 352, 199 Pac. 452; *Pearson v. Picht,* 184 Wash. 607, 52 P. (2d) 314.

Appellants do not dispute these well-settled and generally accepted rules, but contend, rather, that upon the basis of those same rules the amounts awarded to them do not constitute adequate compensation for the injuries and losses sustained by them. Upon that ground they moved "for a new trial and for judgment notwithstanding the memorandum opinion."

Rem. Rev. Stat. (Sup.), § 399 [P.P.C. § 78-3], provides that a former verdict or other decision may be vacated and a new trial granted on the motion of the party aggrieved, for a number of causes including "damages so excessive or inadequate as unmistakably to indicate that the verdict must have been the result of passion or prejudice."

We have repeatedly held, in cases tried before a jury, that, where the evidence is conflicting, it is wholly within the discretion of the trial court to grant or to deny a motion for new trial upon the ground that the evidence is insufficient to justify the verdict, or that the verdict is against the weight of the evidence, or that the amount awarded is, in the opinion of the trial court, either excessive or inadequate, and that the ruling of the trial court on such questions will not be disturbed, in the absence of manifest abuse of discretion. *Huntington v. Clallam Grain Co.,* 175 Wash. 310, 27 P. (2d) 583, and cases therein cited; *Thornton v. Eneroth,* 177 Wash. 1, 30 P. (2d) 951.

In the *Huntington* case, *supra,* we quoted from *Norland v. Peterson,* 169 Wash. 380, 13 P. (2d) 483, as follows:

"The trial court, in passing upon a motion for new trial based upon the ground that the verdict of the jury is inadequate or excessive, will consider the evidence, and if that court is of the opinion that substantial justice has not

been done, it will, in the exercise of its duty, grant a new trial. *Daigle v. Rudebeck*, 154 Wash. 536, 282 Pac. 827. But the function of this court is different, and the ruling of the trial court upon the motion will not be disturbed upon appeal, unless it can be said that the verdict is so far inadequate or so excessive as to be without support in the evidence, or it must appear that the verdict was the result of some extrinsic consideration, such as bias, passion or prejudice on the part of the jury."

■ In the case at bar the action was tried by the court, without a jury. There is no contention here, nor could there well be, that, in reaching its decision, the trial court, sitting as the trier of the fact, was moved by bias, passion, or prejudice. The record clearly shows that the court gave the matter careful, impartial, and dispassionate consideration, arriving at its conclusions after full argument by counsel and after taking the cause under judicial advisement. Our function, then, is only to determine whether the amounts allowed by the court are so far inadequate as to be without support in the evidence, or are clearly against the weight of the evidence, or, as sometimes expressed, are so far out of line with what is just and reasonable as to shock the conscience of the appellate court.

It is true that this court has at various times increased the amount of an award made by the trial court. See *Barney v. Anderson, supra; Knight v. Duggan,* 163 Wash. 107, 299 Pac. 986; *Pearson v. Picht, supra.* In those cases, however, the injuries, or at least some of them, were permanent, and, upon the express findings made by the trial court concerning the nature and extent of the injuries, this court, being fully satisfied that the amounts allowed therefor were inadequate, increased them materially.

The situation with respect to this case is different. The trial court expressly found that none of Mrs. Dyal's injuries was permanent. With respect to Mrs. Crawford, the court expressly designated her injuries as the loss of two teeth (replaced by a partial plate); a cut on the cheek resulting in a small scar which was not disfiguring, and some disturbance of her nervous system, and bruises and contusions. The trial court not only heard the evidence,

but also saw the injured complainants, observed their physical actions, and had its attention drawn specifically to the injured parts of their persons. That court was therefore eminently better qualified than are we to determine the character, extent, and effect of the injuries and the length of time the appellants had actually lost as the result of those injuries.

We do not presume to say, nor do we wish to be understood as holding, that the amounts allowed by the trial court for the physical injuries, *as testified to by the appellants,* fully compensated them in damages, and certainly we do not fix the value of two front teeth of any person at two hundred fifty dollars. But we are just as unprepared to say that, under the evidence disclosed by the record, the amounts found by the court are inadequate. The amount awarded by the court for each item of injury or loss was substantial, and we cannot say that the trial court abused its discretion in arriving at its conclusions, or that the findings are without support in, or are contrary to, the evidence, or that the amounts allowed are so inadequate as to shock one's conscience.

As to the amounts awarded by the trial court for property damage, we have already stated the basis of the court's allowances and its reasons therefor. With reference to that subject we are likewise unable to say that the court was wrong in any particular.

Appellants assert and argue in their brief that, in fixing the amount of their time loss, the trial court deducted the equivalent of what they would have been required to pay to the United States government for income tax. Whatever may have been said in the oral discussion between court and counsel on the hearing of the post-trial motions or otherwise, there is nothing whatever in the record to indicate that the court made any such deductions.

Counsel on both sides have cited a number of cases from this and other jurisdictions purporting to show injuries, or combinations of injuries, comparable to those involved here, and the amounts which the courts therein awarded or allowed to stand after verdict by a jury. Ap-

pellants' counsel concedes, however, that he has found no case presenting exactly the same injuries, in combination, as those involved in this case. That, of course, is not surprising, for seldom, if ever, will two cases present exactly the same kind and extent of injuries. A vast collection of cases in which specific verdicts for various injuries, or combinations of injuries, were considered will be found in 25 C. J. S. 914 to 990, Damages, § 198; 15 Am. Jur. 627 to 659, Damages, §§ 209 to 228, inclusive; Ann. Cas. 1916B, 384 to 444. While the courts have for comparison repeatedly made, and may make, reference to verdicts in other cases wherein the amounts were held to be excessive, inadequate, or proper, nevertheless it is well recognized that no one case is a controlling criterion or an exact and binding precedent in another case, even though there may be a close parallelism of facts and circumstances, and oftentimes the citation of other awards as to quantum of damages is merely confusing. Each case must be governed by its own facts and circumstances and considered in the light of the rules already stated above.

We have hereinbefore referred to the fact that, in the case of Mrs. Crawford, the trial court allowed her for her doctors' bills an amount which was ten dollars less than what she expended or was obligated to pay therefor. We are satisfied that the court intended to allow her the full amount for that item and that its failure to do so was simply the result of a mistake of addition in computing the amount of those bills. The total amount of her judgment will therefore be increased by the sum of ten dollars.

With this slight modification, the judgment of the trial court is affirmed.

BEALS, C. J., MILLARD, JEFFERS, and GRADY, JJ., concur.