[No. 753-1. Division One—Panel 1. November 15, 1971.]

PHYLENE T. BALTZELLE, *Respondent and Cross-appellant,* v.
DOCES SIXTH AVENUE, INC., *et al., Appellants.*

*Karr, Tuttle, Koch, Campbell, Mawer & Morrow, Robert P. Piper,* and *Steven V. Lundgren,* for appellants.

*Skeel, McKelvy, Henke, Evenson & Betts* and *W. R. McKelvy,* for respondent and cross-appellant.

HOROWITZ, C.J.—Plaintiff commenced a personal injury action below. After trial to the court, judgment was entered in plaintiff's favor for $19,110.45, including therein the sum of $10,000 for general damages. Thereafter, defendants appealed and plaintiff cross-appealed on the ground that the general damages awarded should be at least doubled. For the reasons next stated, we approve the trial court judgment appealed from.

Defendants operated Doces Sleep Shop at 1514 Sixth Avenue, Seattle. On October 28, 1968, plaintiff entered the shop desirous of purchasing a daveno. After learning that defendants' store did not have the type of daveno she wanted, plaintiff left the store through the north Sixth Avenue door. Viewed from the inside of the store, the door opened from right to left out onto a 4-foot 5-inch-wide entranceway beyond the curb of a false planter next mentioned, extending the entire length of the store property north and to some extent south of the door. Immediately outside and to the right of the door was a false planter consisting of a paved area bordered by a flat cement 4-inch curb of a darker color which extended out from the building westerly towards Sixth Avenue for approximately 1 foot and then turned at a right angle in a northerly direction and paralleled the store window until it reached the northerly exterior wall of the shop. The 1-foot false planter curb at the point of contact with the base of the storefront window wall was flush with the entranceway floor and extended therefrom westerly, rising gradually

until it reached a height of three fourths of an inch above the entranceway pavement level at its westerly extremity. It is reasonably inferable that a store customer exiting from the north door, after allowing it to close, could unwittingly step on the 4-inch flat cement curb without realizing that he was not standing on the entrance floor itself. Within the planter area immediately to the right of the door and approximately 4 inches from the inside of the 1-foot curb above described was located a siamese standpipe. The top of the standpipe slightly overhangs the 4-inch curb in front of it into the space above the entrance floor. The plaintiff testified:

> I just walked out of the door and stepped aside and let it close, and I stepped back a second and looked up and down the street and decided I would go to Fredericks, and I took a step and fell over something and landed on my hip. . . . I felt it hit against my leg.

The court found:

> That as [plaintiff] was proceeding toward Sixth Avenue and after she had gone through that door, and while she was still on property owned, operated and maintained by the defendants, she fell because of a hazardous condition existing in close proximity to the door through which she had walked, said condition consisting in part of . . . a stand pipe and a siamese connection, and because of the general structure of the area near the door . . . which also included a false planter area with a false parapet or border which was not flush or level in its entirety with the surrounding area referred to in the evidence as terrazo . . . also on the defendants' property. (See Exhibit 18.) That because of the close proximity of the pipe and the nature of the other structures above mentioned as related to each other and the door . . . there existed a hazardous condition to which the defendants' invitees, including this plaintif, were subjected and exposed, and that as a result of the defendants' negligence in maintaining and operating the store . . . with the existing condition above referred to, the plaintiff fell, sustaining injuries and damages as hereinafter set forth.

Finding 2. The court found further that the hazardous condition described "made it reasonably foreseeable that the type of accident experienced by this plaintiff might reasonably be expected to occur as a result of the defendants' negligence."

▮▮ Defendants first contend that there is not substantial evidence supporting the trial court's finding of negligence. We disagree. The legal principles involved are clear, although their application on issues of reasonable conduct and reasonably foreseeable harm pose a more difficult problem. A preliminary statement of these principles is appropriate. The defendants, as owners and proprietors of a store, have a duty to exercise reasonable care to keep those portions of the premises used by their customers in a reasonably safe condition, or to warn the customer-invitees of the dangerous condition known or which should have been known to the owner and which is not known or reasonably discoverable by the invitee. *Hemmen v. Clark's Restaurant Enterprises*, 72 Wn.2d 690, 434 P.2d 729 (1967); *Hartman v. Port of Seattle*, 63 Wn.2d 879, 389 P.2d 669 (1964); *Blancher v. Bank of California*, 47 Wn.2d 1, 286 P.2d 92 (1955); *Wardhaugh v. Weisfield's, Inc.*, 43 Wn.2d 865, 264 P.2d 870 (1953). Included in this general duty is the obligation to use ordinary care to keep the approaches, entrances and exits in a reasonably safe condition for use of customers who are entering or leaving the business. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 372 P.2d 193 (1962); *Tyler v. F. W. Woolworth Co.*, 181 Wash. 125, 41 P.2d 1093 (1935); Annot., 81 A.L.R.2d 750 (1962). The question of whether the defendants failed to exercise reasonable care in maintaining the obstructions adjacent to the door is one of fact to be resolved by the trier of fact. *Smith v. B & I Sales Co.*, 74 Wn.2d 151, 443 P.2d 819 (1968). *See also, Gordon v. Deer Park School Dist. 414*, 71 Wn.2d 119, 426 P.2d 824 (1967).

▮ The testimony and exhibits reveal that the standpipe and the false planter were placed in the reasonably foreseeable footpath of a person exiting through the door of

the entranceway who might step back on the flat cement 4-inch curb after allowing the door to close without being aware at the time that the curb was not part of the entranceway floor. This fact alone provides substantial evidence for the trial court's finding of negligence. Defendants cite various cases where it was held, as a matter of law, that the storeowner was not negligent. *See e.g., Engdal v. Owl Drug Co.,* 183 Wash. 100, 48 P.2d 232 (1935), involving injuries sustained by a customer who stepped backward and tripped over a scale located off an aisle 4½ feet wide and out of the line of travel. All cases so cited, however, are distinguishable on their facts. None involve an object placed in such proximate position to the exit door that customers might foreseeably run into it as they walked from the exit door as the plaintiff did in the instant case. *Cf., Hammer v. Haggard,* 56 Wn.2d 744, 355 P.2d 334 (1960). Additionally, it is suggested, on the basis of the court's oral decision, that the determination of negligence was erroneously made on the basis of hindsight; however, the written findings, which must control (*see Schmechel v. Ron Mitchell Corp.,* 67 Wn.2d 194, 406 P.2d 962 (1965)), indicate that the court properly viewed the matter in terms of foreseeability prior to the fact of the accident. *See Gordon v. Deer Park School Dist. 414, supra; Severns Motor Co. v. Hamilton,* 35 Wn.2d 602, 214 P.2d 516 (1950); *Peterson v. Betts,* 24 Wn.2d 376, 165 P.2d 95 (1946); W. Prosser, Law of Torts § 31 (4th ed. 1971). We cannot hold on this record that reasonable minds could not differ concerning whether defendants exercised reasonable care. A fact question is presented. *Severns Motor Co. v. Hamilton, supra.*

 Next, it is contended by defendant that plaintiff was contributorially negligent as a matter of law. It is contended that the dangers complained of here were obvious and that plaintiff failed to exercise her duty of taking measures to avoid an obvious danger. *See Hammer v. Haggard, supra; Smith v. Manning's, Inc.,* 13 Wn.2d 573, 126 P.2d 44 (1942). But this argument assumes that dangers are either hidden or obvious, and that in the latter case the

plaintiff must be negligent while in the former she cannot be. However, the plaintiff's basic duty is to exercise reasonable care to avoid self injury. *Costacos v. Spence*, 74 Wn.2d 884, 447 P.2d 704 (1968); *see also, Rosendahl v. Lesourd Methodist Church*, 68 Wn.2d 180, 412 P.2d 109 (1966). Reasonable care on her part may or may not require that she look on the ground in front of her as she walks on the entranceway of the store. *See Smith v. Manning's, Inc., supra.* It is settled law that a customer-invitee, when walking in an area where there is no reason to anticipate a hazard, need not keep her eyes glued to the floor; that the fact that the hazard is observable is not controlling on the issue of contributory negligence because she may assume that the entranceway leading in and from the store is in a reasonably safe condition in the absence of notice to the contrary. *Smith v. B & I Sales Co., supra; Todd v. Harr, Inc.*, 69 Wn.2d 166, 417 P.2d 945 (1966); *Blasick v. Yakima*, 45 Wn.2d 309, 274 P.2d 122 (1954); *Simpson v. Doe*, 39 Wn.2d 934, 239 P.2d 1051 (1952). Hence, we cannot say that, as a matter of law, the plaintiff was under a mandatory duty to look at the ground in front of her as she walked. The issue of contributory negligence, therefore, was properly left to the consideration of the trier of fact. *See Smith v. B & I Sales Co., supra; Wardhaugh v. Weisfield's, Inc., supra; McBeath v. Northern Pac. Ry.*, 32 Wn.2d 910, 204 P.2d 248 (1949). Defendants suggest that the evidence shows plaintiff was injured because she backed up without looking and placed herself in a position of danger so that she was herself to blame for the fall. They cite *Hennesy v. Tina Marie Homes, Inc.*, 153 Colo. 572, 388 P.2d 758 (1963), and *Engdal v. Owl Drug Co., supra*, in support of this proposition. The trial court did not find that plaintiff fell while backing up; and neither the evidence nor findings support the claim that, in walking in and from the entranceway in the manner that she did, she acted unreasonably as a matter of law. In our opinion, the trial court's finding that the plaintiff was not contributorially negligent is supported by substantial evidence and that finding is binding upon us. *Thorndike*

*v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959); *Smith v. Manning's, Inc., supra.*

Finally, plaintiff by cross-appeal contends that the trial court should be directed to enter judgment for general damages for at least twice the amount of $10,000 awarded by the trial court. It should first be noted that this is not an appeal under RCW 4.76.030 from an unconditional or conditional denial of a motion for new trial based on error in assessment of damages. Plaintiff contends rather that an appellate court in a personal injury case involving an award of unliquidated damages tried to a court, may direct the trial court to enter a judgment increasing the award without reversing for a new trial on the issue of damages or granting a new trial if the adverse party does not consent to the increase.

There is decisional support for this view. The Supreme Court has increased trial court awards for unliquidated damages by very substantial increases. *Olson v. King County,* 188 Wash. 334, 62 P.2d 719 (1936); *Pearson v. Picht,* 184 Wash. 607, 52 P.2d 314 (1935); *Knight v. Duggan,* 163 Wash. 107, 299 P. 986 (1931); *Barney v. Anderson,* 116 Wash. 352, 199 P. 452 (1921). *See also Gunderson v. Green,* 154 Wash. 201, 281 P. 731 (1929). *See generally* Annot., 95 A.L.R. 1163 (1935); 5 Am. Jur. 2d *Appeal and Error* § 946 (1962, Supp. 1971). However, in subsequent Washington cases involving an appeal from a trial court award claimed to be excessive, the Supreme Court has ordered a new trial on the damage issue unless the party aggrieved by the ruling consented to a reduction. *Fitzgerald v. Hopkins,* 70 Wn.2d 924, 425 P.2d 920 (1967) (50 per cent reduction); *Malstrom v. Kalland,* 62 Wn.2d 732, 384 P.2d 613 (1963) (30 per cent reduction); *see* Annot., 11 A.L.R.3d 9, § 2[k] (1967, Supp. 1971). Our disposition of the cross-appeal makes it unnecessary to determine whether the interests of consistency require that the practice of requiring consent followed in *Malstrom v. Kalland, supra,* should be followed also in additur cases. *See Dimick v. Schiedt,* 293 U.S. 474, 79 L. Ed. 603, 55 S. Ct. 296, 95 A.L.R. 1150 (1935).

■ The problem here is to determine the standard to be used in determining when the doctrine of additur should be applied by an appellate court. Needless to say, the existence, nature and extent of monetary damages in tort cases raises a question of fact for the trier of fact, be it a jury or court sitting without a jury. *Schmechel v. Ron Mitchell Corp.*, 67 Wn.2d 194, 406 P.2d 962 (1965); *Malstrom v. Kalland, supra; Kramer v. Portland-Seattle Auto Freight,* 43 Wn.2d 386, 395, 261 P.2d 692 (1953); *Dyal v. Fire Cos. Adjustment Bureau, Inc.*, 23 Wn.2d 515, 521, 161 P.2d 321 (1945). Both the trier of fact and an appellate court are handicapped by the absence of precise guidelines in translating injuries into appropriate monetary terms. *Estes v. Bevan*, 64 Wn.2d 869, 871, 395 P.2d 44 (1964); *Malstrom v. Kalland*, 62 Wn.2d at 736. In both additur and remittitur cases, not only do trial courts differ with one another and with appellate courts, but appellate judges also differ with one another on this matter. *See Fitzgerald v. Hopkins, supra.* Comparing damage awards made in other cases with the award of a case under consideration may help. However, the differences in factors such as life expectancy, purchasing power of money at a given time, intensity and duration of past and future pain and suffering, the extent of disability and other damage elements require that damage awards in other cases not be considered controlling. *Dyal v. Fire Cos. Adjustment Bureau, Inc., supra* at 524-25; Annot., 16 A.L.R.2d 393 (1951); Annot., 12 A.L.R.3d 475 (1967, Supp. 1971); Annot., 11 A.L.R.3d 9 (1967, Supp. 1971). Accordingly, we cannot treat *Hanson v. Newberry Renton Corp.*, 3 Wn. App. 546, 475 P.2d 893 (1970), relied on by the plaintiff in oral argument, as controlling. An award approved in one case because permissible does not mean that the amount of the award in another case must be treated as mandatory.

If we are to continue to recognize the power of the trial court to make findings of fact supported by substantial evidence binding upon us (*Schmechel v. Ron Mitchell Corp., supra; Fosbre v. State,* 70 Wn.2d 578, 586, 424 P.2d

901 (1967); *Estes v. Bevan, supra*), and if we are to continue to observe the spirit of the rule stated in *Thorndike v. Hesperian Orchards, Inc., supra,* that we have no constitutional power to substitute our findings for that of the trial court, our power to interfere with the findings of the trial court must be sparingly used indeed.

We see no reason for applying a different standard in additur cases than we apply in remittitur cases when determining whether to interfere with the trial court finding of damages. Under that standard, it is not prerequisite to interference that the court-tried case award be the product of passion and prejudice. *Malstrom v. Kalland, supra.* It is enough if the award would "shock the sense of justice and sound judgment" of the appellate court. *Malstrom v. Kalland, supra* at 738; *Fosbre v. State, supra* at 587; *Fitzgerald v. Hopkins, supra* at 930; *Gustin v. Susnar,* 68 Wn.2d 504, 506, 413 P.2d 822 (1966); *Harvey v. Wight,* 68 Wn.2d 205, 412 P.2d 335 (1966); *Schmechel v. Ron Mitchell Corp., supra* at 196. The rule stated gives expression to the principle that one may differ with a trial court award without being shocked or outraged by the size of the award, be it high or low. As the court stated in *Gustin v. Susnar, supra,* quoting with approval from a footnote in *Harvey v. Wight, supra:*

> "It is only fair to note that it [the verdict] may 'shake' some of us, but it does not 'shock' us."

68 Wn.2d at 506, n.1.

We recognize that even the remittitur standard lacks precision; but the thrust of this standard in additur cases better comports with the rule that fact-finding is a function of the trial court and not of the appellate court. If reasonable men would not disagree that the award shocks the appellate court's sense of justice and sound judgment, the doctrine of additur or remittitur should be applied. If, however, this cannot be said when the standard is applied, then the appellant has not sustained the burden of demonstrating reversible error and the trial court's award must be affirmed. In the instant case, the court found:

That as a . . . . proximate result of the defendants' negligence, the plaintiff sustained a fractured right hip, shock, pain and suffering, aggravation of pre-existing physical conditions as reflected by the evidence and sustained a permanent injury to the hip of approximately one-third disability of the hip and leg as compared to an amputation at the hip. Plaintiff has suffered pain since the time of the accident . . . and will suffer pain in the future as a result of said injury; . . . That she has been limited . . . and will be limited in the manner in which she walks in the future and . . . in other activities because of said injuries throughout the balance of her life. (F. IV.)

█ The court made no specific finding so denominated concerning the amount of general damages, but its conclusions of law stated that the plaintiff was entitled to "general damages in the total sum of $10,000.00." Such a conclusion is in the nature of a finding of fact and should be so treated by us. *Estes v. Bevan, supra* at 871; *Ferree v. Doric Co.*, 62 Wn.2d 561, 383 P.2d 900 (1963). *See Kane v. Klos,* 50 Wn.2d 778, 788-89, 314 P.2d 672 (1957).

There is no showing that the court failed to consider all factors pertinent to the translation of the injuries sustained in monetary terms, including the diminishing purchasing power of the dollar (*Kramer v. Portland-Seattle Auto Freight, supra* at 397-98), and the life expectancy of the plaintiff on the basis of two figures mentioned below, namely, 7.39 years and 8.24 years. We cannot say that the trial court exceeded its powers.

The judgment is affirmed.

UTTER and WILLIAMS, JJ., concur.