[No. 31830. Department Two. January 17, 1952.]

CLARIBEL SIMPSON et al., *Respondents*, v. JOHN DOE et al., *Defendants*, STERLING THEATRES, INC., *Appellant*.[1]

*Peyser, Cartano, Botzer & Chapman,* for appellant.

*Kahin, Carmody & Horswill* and *Hereford T. Fitch,* for respondents.

HAMLEY, J.—This action was brought to recover damages for injuries sustained when Mrs. Claribel Simpson fell in the ladies' lounge at the Garden Theatre, in Seattle. Mrs. Simpson will be referred to as if she were the only plaintiff and respondent. The theatre is owned and operated by Sterling Theatres, Inc., which was the only defendant served with the complaint. The jury returned a verdict for plaintiff in the sum of fifteen thousand dollars. Motions for judgment for defendant n. o. v., or, in the alternative, for a new trial, were denied, and judgment was entered on the verdict. Defendant appeals.

[1] Reported in 239 P. (2d) 1051.

The only issue before us is whether Mrs. Simpson was contributorily negligent as a matter of law. This calls for a consideration of the pertinent evidence, viewed in the light most favorable to respondent.

On the afternoon of May 14, 1949, Mrs. Simpson, then forty-nine years old, entered the theatre and took a seat on the main floor of the auditorium. During the intermission between two pictures, she left her seat for the purpose of going to the ladies' rest room. She walked up a carpeted stairway and entered the ladies' lounge. This was a rectangular room approximately eight and a half feet wide and seventeen feet long. Entrance to the lounge was gained by parting curtains over a doorway at one end of the room.

The lounge was carpeted, wall to wall, with a rug of some medium shade which was neither extremely light nor extremely dark. The windows were draped so that no natural light entered the room. There was a light fixture in the ceiling of the lounge, but it was apparently not in use when Mrs. Simpson entered. However, there was a floor lamp in the corner opposite the entrance door, and at the same end of the lounge, which cast a glaring light toward the ceiling. The diffusion of this light was such that one could not read in the area adjacent to the lamp, and the other end of the lounge was only "dimly" lighted. However, there was sufficient light to enable one to find the door leading to the ladies' toilet room, which was located at the far end of the lounge.

The floor level of the toilet room was about five inches higher than the floor level in the lounge. A step of that height was located flush with the doorway leading into the toilet room. The door between the two rooms swung inward towards the toilet room. The floor of the latter room consisted of grayish white tile, which was lighter than the lounge rug but tended to blend with it. The toilet room was well lighted.

When Mrs. Simpson entered the lounge, she turned to her right, walked the length of the room, and entered the toilet room. She had no difficulty in finding the door to the

toilet room or in making the step up into that room. She testified that the lounge was dimly lighted "but not too dark to feel your way around." Mrs. Simpson admitted that she must have stepped up on going into the toilet room, but testified that the step was not impressed on her mind and she had no recollection of having stepped up as she entered that room.

After a few minutes, she opened the door to leave that room, and hesitated slightly while she looked out into the lounge. She did not look directly down at her feet, but looked at the floor about three feet ahead of her "as you naturally look ahead as you walk." The light coming through the open doorway from the toilet room cast some additional light into the lounge, but this was minimized by the shadow cast by Mrs. Simpson's figure in the doorway. She did not notice the difference in floor level between the two rooms as she stepped forward into the lounge. She consequently fell, sustaining the injuries for which she seeks recovery.

Eight witnesses corrobated Mrs. Simpson's testimony that the lounge was dimly lit. Six of these witnesses corroborated her testimony as to the deceptively level appearance of the floors of the two rooms, as viewed by one entering the lounge from the toilet room. One of these witnesses had broken her hip in a similar fall the previous summer under lighting conditions substantially the same as on the day here in question. There was no sign, hand rail, lighting or other device to give warning of the step.

The facts summarized above indicate that Mrs. Simpson's fall was not due to a slippery or defective condition of the step, or because the step was abnormally high. It was due entirely to the fact that, when she walked back into the lounge, Mrs. Simpson was then unaware that there was any step at that place.

Does such unawareness evidence contributory negligence on her part? The jury, who heard the witnesses and examined the premises, thought not. The trial judge agreed,

or at least concluded that there was substantial evidence to support the jury's finding.

Except for the fact that Mrs. Simpson had used this same step a few minutes earlier, it is clear that this finding is supported by substantial evidence. The testimony overwhelmingly established that a deceptive condition existed relative to the floor levels of the two rooms. The jury verdict and judgment in fact foreclose that issue, since no error is assigned relative to the finding of appellant's primary negligence. Where the existence of deceptive conditions as to the presence of a hazard or danger is thus established, this in itself tends to negative a claim that one who is, in fact, deceived by such conditions, is guilty of contributory negligence.

The evidence shows affirmatively that Mrs. Simpson did not walk out into the lounge without looking where she was going. She hesitated momentarily and looked at a place on the floor about three feet ahead of her. We need not speculate as to whether she would have noted the step had she looked directly at her feet as she passed through the doorway. Where there is no reason to anticipate a hazard, reasonable care does not require one who is walking in a place provided for the purpose to keep his eyes riveted to the floor immediately in front of his feet. *Griffin v. Cascade Theatres Corp.*, 10 Wn. (2d) 574, 583, 117 P. (2d) 651; *Smith v. Manning's, Inc.*, 13 Wn. (2d) 573, 578, 126 P. (2d) 44.

It is argued, however, that though Mrs. Simpson was not aware of the step at the time she fell, she should have been aware of it because she had used the step only a few minutes earlier. The legal question posed by this contention is not whether the jury could have based a finding of contributory negligence on respondent's failure to keep the step in mind, but whether such failure constitutes contributory negligence as a matter of law.

Appellant contends that an affirmative answer to this question is required in view of our decision in *Viles v. Thunborg*, 164 Wash. 190, 2 P. (2d) 666. The facts recited

in that opinion indicate that Mrs. Viles went to visit a friend in the defendant's hotel. Sometime later, she desired to go to a rest room and received directions from the hotel tenant whom she was visiting. She stepped into a short hallway, walked north until she reached a hallway extending east and west, and then walked eastward. She passed the doors of several guest rooms along the south side of this hallway and, after walking eastward about sixty feet, came to the rest room on the same side.

According to Mrs. Viles' testimony, an electric light attached to the wall a few feet east of the rest room was not burning, and the hallway was quite dark. However, the door of the rest room was standing ajar, and rays of light were reflected from that room into the hallway. She testified that, as she approached and entered the rest room, she observed that the floor was some five or six inches higher than the floor in the hallway. "I saw it and stepped up on it." The door of the rest room opened inwardly. On leaving the rest room a few minutes later and while stepping down into the hallway, she fell and was injured.

Examination of the briefs filed in the *Viles* case indicates that Mrs. Viles' testimony as to whether she saw the step when she came out was somewhat conflicting and unsatisfactory. She first testified that she did not "notice" the step, never "thought" of the step, and "was looking down the hall and not remembering the step." She later testified, however, that "I do not remember if I saw the step when I came out. I was looking for a light." Mrs. Viles' testimony as to the care she exercised while leaving the rest room was also indefinite and conflicting. At one point she testified that she walked "right out." Later she testified that "I was looking for my bearing in the hall . . ."

The jury returned a verdict for Mrs. Viles, but the trial judge granted judgment for the defendant n. o. v. We affirmed, saying in part:

"If she 'walked right out,' then clearly she failed to exercise due care for her own safety, because as she entered

the lavatory she was aware of the step-off. If she was 'looking for her bearing,' then she was cognizant of the step-off and it was incumbent upon her to exercise such care in stepping into the hallway as not to be precipitated onto the floor. This she failed to do. . . .

"Upon approaching and entering the lavatory, she observed that the level of the toilet was higher than the level of the adjacent hallway, and she ascended to the higher level without difficulty or mishap. A few minutes later, on leaving the lavatory through the same door and over the same step, either because of inattention, thoughtlessness, haste, or miscalculation, she fell and sustained the injuries complained of. If, as she says, the hallway was dark or poorly lighted, then it was incumbent upon her to proceed with greater caution, and wait, after she had opened the door, until she had fixed in her mind's eye the floor level of the hallway before attempting to descend the step. Her failure to do this was the proximate cause of the injury, and bars any recovery against the respondent." (pp. 194-198)

The judgment n. o. v. in the *Viles* case might well have rested upon the ground that Mrs. Viles must have actually been aware of the step as she left the rest room, or, if she was not aware of it, that she could have seen the step if she had exercised reasonable care. Nevertheless, in the quoted portion of the *Viles* opinion, the court infers that, having used the step as she entered the rest room, Mrs. Viles is chargable with being aware of it as she left.

This reasoning may have been entirely justified under the particular facts of the *Viles* case. The door of the rest room was ajar as Mrs. Viles approached, tending to call particular attention to the step. She recalled, at the time of the trial, that she had seen the step as she entered the rest room. Before reaching the rest room, Mrs. Viles had proceeded down a long, level hallway, with only this one step to a different level.

In the case before us, the facts are different in each of these respects. The door to the toilet room was not ajar, and there existed no circumstance tending to call special attention to the step. While Mrs. Simpson must have seen the step as she entered the toilet room, it made no impres-

sion on her mind, and later she could not recall having seen or used the step. Before entering the toilet room, Mrs. Simpson had just come up the carpeted stairway leading to the lounge.

In this latter respect the instant case is much like *Hayden v. Colville Valley Nat. Bank*, 180 Wash. 220, 39 P. (2d) 376, where a judgment for the defendant, n. o. v., was reversed. The plaintiff there, in walking to the second floor of an office building, had mounted a flight of twenty-seven steps, crossed a landing, and then mounted one additional step at right angles to the main stairway. She fell when, on her descent to the street, she failed to notice this top single step. While there were other factors, not here present, tending to divert the plaintiff's attention, the opinion indicates that the experience of mounting the main stairway immediately prior to using the single step tended to excuse the plaintiff from recalling the step when she retraced her way.

In our view, the decision in the *Viles* case does not purport to lay down a general rule, applicable in all cases, or in this case, that one who takes a step up to a higher level is contributorily negligent, as a matter of law, in failing to remember that step while retracing his way a few minutes later.

Appellant has cited a number of cases from other jurisdictions. Several of these are not "retracing" cases and so have no bearing upon the question of whether one is necessarily negligent in failing to remember a step recently used. Among the other decisions cited by appellant is *Burdeaux v. Montgomery Ward & Co.* (La. App.), 192 So. 728. In this case the fall was caused by a swinging toilet door, there being no claim that the plaintiff was unaware of the step. Likewise, in *Pierce v. Burlington Transp. Co.*, 139 Neb. 423, 297 N. W. 656, there was no such claim, the plaintiff having slipped on the floor and then having fallen over the step. In *Ware v. Evangelical, etc.*, 181 Mass. 285, 63 N. E. 885, the court made a passing remark to the effect that the plaintiff had not stumbled over the step as she went in.

However, this observation was made in connection with the court's ruling that the defendant was not guilty of primary negligence in maintaining the step.

In *Watkins v. Piggly Wiggly Bird Co.*, 31 F. (2d) 889, the plaintiff stopped on the sidewalk, in broad daylight, and pulled a screen door towards her before making a step up to the floor level of a store. She fell in leaving the store, when she pushed open the screen door "and stepped forward without looking." The court stated, among other things, that, having used the step a short time before, the plaintiff "knew the difference in the level" between the sidewalk and the floor of the store. In *Wessner v. Blue Ridge Transp. Co.*, 338 Pa. 161, 12 A. (2d) 559, plaintiff's attention was called to the higher level of a toilet compartment when she stopped to deposit a coin before opening the door. She was injured when she left the compartment and "stepped forward without looking." The court observed that, having used the step in entering the compartment, the plaintiff "had actual notice that the step was there."

In view of the factual situations involved in the *Watkins* and *Wessner* cases, the quoted observations relative to the plaintiff's duty to remember the step were probably entirely appropriate. Each of these two cases, as did the *Viles* case, involved circumstances calling particular attention to the step in question, fixing its presence in the mind of the plaintiff. We do not believe they can be regarded as announcing a general rule which is controlling with regard to the substantially different facts of the case before us.

Whether or not a person should be chargeable with remembering a particular hazard, such as a step of this kind, depends upon many factors which can ordinarily be evaluated only by triers of facts. The opportunities for distraction, the length of time elapsing before the way is retraced, and the peculiarities of construction, furnishings and light, all must be considered, and presumably were considered by the jury here. As was said in *McStay v. Citizens Nat. Trust & Sav. Bank*, 5 Cal. App. (2d) 595, 43 P. (2d) 560, 562, in affirming a judgment for a plaintiff who fell while retrac-

ing her steps down from a platform in a dining room at the Roosevelt hotel in Hollywood:

"On the question of contributory negligence of respondent Mrs. McStay, the evidence of her information, acts and conduct leading up to and surrounding her injury is of such nature as peculiarly calls for the determination thereof by triers of facts. It cannot be concluded therefrom that as a matter of law respondent was guilty of contributory negligence. Where different conclusions may be reasonably drawn by different minds from the same evidence, the decision must be left to the jury. And herein it is clear that whether or not the information possessed by Mrs. McStay was sufficient to impresss upon her mind the danger incident to the use of the platform and steps in question was for the jury to decide as an issue of fact." (p. 600)

In our opinion, the trial court did not err in leaving the jury verdict undisturbed.

The judgment is affirmed.

SCHWELLENBACH, C. J., HILL, FINLEY, and OLSON, JJ., concur.

---

February 29, 1952.  Petition for rehearing denied.