[No. 32522.   Department Two.   December 17, 1953.]

HENRY E. WARDHAUGH *et al., Appellants,* v. WEISFIELD'S, INC., *Respondent.*[1]

[1]Reported in 264 P. (2d) 870.

*Fred H. Dore* and *Martin L. Wolf*, for appellants.

*Kahin, Carmody & Horswill* and *Pinckney M. Rohrback*, for respondent.

HAMLEY, J.—This action was brought to recover damages for injuries sustained by Mrs. Catherine C. Wardhaugh as a result of falling to the floor in the store of Weisfields's, Inc., in Seattle. Mrs. Wardhaugh will be referred to as if she were the only plaintiff and appellant. The jury returned a verdict in plaintiff's favor in the sum of $4,329.30. The trial court thereafter granted defendant's motion for judgment

n.o.v., the alternative motion for new trial being denied. Plaintiff appeals.

Only two questions are presented by the assignments of error: (1) Did the trial court err in holding that there was no evidence, or inferences therefrom, from which the jury could find that respondent was negligent; and (2) did the trial court err in holding that appellant was contributorily negligent as a matter of law?

Consideration of these questions requires that we assume the truth of the evidence submitted by appellant and all inferences which reasonably can be drawn therefrom, and that the evidence be interpreted most strongly against respondent and in the light most favorable to appellant. *Olsen v. White*, 37 Wn. (2d) 62, 221 P. (2d) 542; *Myers v. Little Church by the Side of the Road*, 37 Wn. (2d) 897, 227 P. (2d) 165. The following recitation of facts is made with this rule in mind.

The accident occurred on April 21, 1951, on a ramp in the balcony of the store. This ramp had been constructed in 1950 to connect two floors which were of different elevations. The ramp extends across the entire balcony and is a little over six feet long. In that distance, there is a rise of four and a half inches, so the ramp has a grade of six per cent. A four and a half or five-foot strip along one side of this ramp is used as a place for customers to walk. This portion is, in effect, a part of the aisle which extends some fifteen feet or more from either end of the ramp. The remainder of the ramp, or at least the portion thereof immediately adjacent to the described aisle, is utilized to display small tables, stands, and other items of occasional furniture, together with table and floor lamps.

Along the other side of the portion of the ramp which is used as an aisle, there are three levels of built-in shelves. Each of the top two of these shelves is set back a foot or so from the shelf below, forming a steplike display counter. This tiered display counter extends the full length of the ramp and for fifteen feet or more along the aisle which connects with the upper end of the ramp. The tiered shelves which are adjacent to the ramp do not follow the grade of

the ramp. Instead, they maintain the same level established for them along the fifteen feet of aisle connecting with the top of the ramp. Table lamps of various shapes and sizes are displayed on the tiered shelves which have been described.

The portion of the ramp which is used as a part of the aisle is covered with a light-colored asphalt tile. This flooring matches (except for one three-foot band of black tile running at right angles to the aisle) the flooring of the connecting aisles at the top and bottom of the ramp. On the day in question, the asphalt tile floor of the ramp was waxed and highly polished, as a result of which it had a uniform sheen. Many, if not all, of the lights displayed on either side of the aisle portion of the ramp were lit, and additional lighting was provided by overhead fixtures. There were no warning arrows, lights, signs, or other devices to call attention to the ramp.

On the day of the accident, appellant and her husband walked up the stairs to the balcony and proceeded along the aisle in question to a section of the balcony where television sets were displayed. In doing so, they walked up the ramp without incident and apparently without consciously noting it. This was the first time that either of them had been in this section of the balcony since the ramp had been constructed.

About fifteen minutes later, they started back down the aisle, intending to go down the stairs and leave the store. Appellant was walking beside her husband and had her hand on his arm. She gave this version of what then occurred:

"Q. Mrs. Wardhaugh, as you came down the aisle with your husband, what, if anything, occurred at that time? A. Well, we came down the aisle and we were talking about the lamps, and he drew my attention to one particular lamp that we had bought similar a few years previous, and he said how much cheaper it was now, and that was all. And I stepped on the ramp and went down. Q. And did you trip over your foot? A. No, sir . . . Q. (by Mr. Dore) Will you explain your falling, Mrs. Wardhaugh, to the jury? Tell the jury just how you slipped. A. Well, I stepped on to

the ramp and it threw me forward, not back. It threw me forward, and I went down on both knees, but this knee went out this way (indicating). I went down on this knee (indicating). Q. Which knee is that? A. My right knee. It went this way (indicating), and I fell. Q. How did you land? A. Well, I went on both knees practically, this one off this way (indicating), and down on this one (indicating)."

Mr. Wardhaugh testified that the lamps they were admiring at the time of the accident were on his left-hand side, which would be the side where the tiered shelves were located.

The first question to be considered is whether the trial court should have held that there was no evidence, or inferences therefrom, from which the jury could find that respondent was negligent.

In *Kalinowski v. Y. W. C. A.*, 17 Wn. (2d) 380, 135 P. (2d) 852, we made the following statement regarding the duty of the occupier of a store to an invitee:

"The owner or occupier of a building owes to his invitee the duty of exercising ordinary care to make the floor reasonably safe for his use, or the duty to give to the invitee notice of a dangerous condition known, or which should have been known, to the owner, and unknown to the invitee. However, we stated in *Shumaker v. Charada Inv. Co.*, 183 Wash. 521, 49 P. (2d) 44, that

" 'What is a reasonably safe condition, of course, depends upon the nature of the business conducted and the circumstances surrounding the particular situation.' " (p. 391)

It is alleged in the amended complaint that respondent was negligent in seven particulars. One of these allegations of negligence was withdrawn from consideration by the jury, the following six allegations being submitted:

"1. In carelessly and negligently maintaining the aisle above mentioned with a 4½ inch rise within a distance of six feet.
.  .  .  .
"3. In carelessly and negligently failing to place or erect any warning signs or notice of the dangerous condition there existing.

"4. In failing to warn the customers, and this plaintiff in particular, of the existence of the dangerous condition and the abrupt rise in the aisle above mentioned.

"5. In constructing and maintaining the aisle with a floor covering of such a coloring and condition as to deceive customers, and this plaintiff, of the abrupt rise in the aisle.

"6. In placing and causing to be placed on that portion of the aisle oil or highly slippery material which, in combination with the abrupt change in elevation, constituted a deceptive and dangerous portion of defendant's store.

"7. In placing and maintaining lights and lamps in such a position in close proximity to the aisle above mentioned so that the rise in elevation of the said aisle was not apparent to customers and to this plaintiff."

The evidence summarized above indicates that appellant did not fall as a result of slipping on some substance on the floor of the ramp. Instead, she fell forward when her foot encountered the unnoticed incline of the ramp.

■ In our opinion, there was substantial evidence tending to indicate that appellant failed to notice this incline because of deceptive conditions for which respondent is responsible.

Instead of maintaining a color or design of flooring, or warning arrows, signs, lights, or other devices designed to call attention to the ramp, respondent maintained a surface condition and a display of merchandise immediately adjacent thereto, which had just the opposite purpose and effect. Moreover, the fact that the tiered shelves on which merchandise was displayed followed the level established for them along the aisle at the upper end of the ramp, would tend to deceive customers into believing that the floor also continued on the same level.

■ No problem is presented concerning the rule requiring that, to constitute actionable negligence, it must be shown that the storekeeper had actual or constructive notice of the dangerous condition which caused the accident. See *Mathis v. H. S. Kress Co.*, 38 Wn. (2d) 845, 232 P. (2d) 921. The dangerous condition which the jury here apparently found to exist had nothing to do with some temporary condition which might not have come to respondent's at-

tention. Instead, it related to the deception created by a combination of circumstances, as noted above, all of which had been present for a long time.

Arguing in support of the trial court's ruling on the question of negligence, respondent cites *Dunn v. Kemp & Hebert*, 36 Wash. 183, 78 Pac. 782; *Hollenbaek v. Clemmer*, 66 Wash. 565, 119 Pac. 1114; and *Hogan v. Metropolitan Bldg. Co.*, 120 Wash. 82, 206 Pac. 959. In all of these cases, it was held, as a matter of law, that the storekeeper was not negligent.

In the *Dunn* case, the plaintiff was directed to another counter in a department store, and seeing what she wanted, walked toward the counter and fell into a stairway. The stairway was not in the main aisle. In *Hollenbaek*, the plaintiff was directed to use a side exit from a theater, where it was necessary to make one step down. A bright light was burning at this exit. The plaintiff testified that this light dazzled her as she left the darkened theater, and that she fell when she did not see the step. In *Hogan v. Metropolitan Bldg. Co.*, the plaintiff fell when she stepped out of the door on to a slanting sidewalk of a kind commonly found at store entrances in Seattle.

In neither the *Dunn* nor *Hogan* cases was there any evidence of deceptive conditions. In the *Hogan* case, as a matter of fact, a salesman called the customer's attention to the incline just before the customer stepped upon it. In addition, the scope of the *Dunn* case was considerably narrowed by what this court said in *Emmons v. Charlton & Co.*, 63 Wash. 276, 115 Pac. 163. The *Hollenbaek* case involved elements of deception, but the factor which seemed to weigh heavily with the court was that the step was at an exit where such steps are commonly found and are therefore to be anticipated. We do not regard any of these decisions as controlling under the quite different factual situation of the instant case.

Respondent advances the further argument that actionable negligence cannot be predicated upon the maintenance of deceptive conditions unless there is testimony that appellant actually looked at the floor where the ramp

was located and was deceived into believing that the floor was level. This argument has reference to the testimony that, at the moment of the accident, appellant was looking at the lamp display to her left, and that, prior thereto, she had not noticed the floor.

This contention would have merit if the only claim as to deception was that, because of the condition of the floor itself, an illusion of flatness was created. But the jury could have found that respondent was negligent in arranging a display of merchandise in such a place and way as to attract the attention of customers away from the ramp, and in failing to provide any warning that there was a ramp in the middle of a long and otherwise level aisle.

Failure to provide such warning was evidenced by the absence of signs or other devices designed to call attention to the ramp. It was also evidenced by the failure to surface the ramp in some distinctive color or design, for the purpose of attracting attention to the floor at that point. The testimony regarding the effect of the lighting on the highly polished floor of the ramp bears upon this latter point. Hence, the fact that appellant was not looking at the floor when the accident occurred supports, rather than undermines, her theory of negligence.

The remaining question presented by the assignments of error is whether the trial court erred in holding that appellant was contributorily negligent as a matter of law.

■ The issue of contributory negligence should not be taken from the jury unless the acts done were so palpably negligent as to preclude the possibility of a difference of opinion. *McBeath v. Northern Pac. R. Co.*, 32 Wn. (2d) 910, 204 P. (2d) 248.

It is claimed that appellant was contributorily negligent because she was not looking at the floor at the time of the accident, and so failed to observe the ramp. There can be little doubt that, had appellant looked at the floor just before stepping on the ramp, she would have noted the incline and saved herself from falling.

■ One must use his faculties and senses to discover and avoid danger. *Johnson v. Washington Route*, 121 Wash.

608, 209 Pac. 1100. But, where there is no reason to anticipate a hazard, reasonable care does not require one who is walking in a place provided for the purpose, to keep his eyes riveted to the floor immediately in front of his feet. *Smith v. Manning's, Inc.*, 13 Wn. (2d) 573, 126 P. (2d) 44; *Simpson v. Doe*, 39 Wn. (2d) 934, 239 P. (2d) 1051. *Hines v. Neuner*, 42 Wn. (2d) 116, 253 P. (2d) 945. Nor is contributory negligence chargeable to one who was deceived by appearances calculated to deceive an ordinarily prudent person. *Brandenburg v. Pacific Gas & Electric Co.*, 28 Cal. (2d) 282, 169 P. (2d) 909; *Bradley v. Allis Hotel Co.*, 153 Kan. 166, 109 P. (2d) 165; *Rue v. Wendland*, 226 Minn. 449, 33 N. W. (2d) 593; *Manley v. Haus*, 113 Vt. 217, 32 A. (2d) 668.

■ Where, as here, the jury was warranted in finding that the storekeeper was negligent in maintaining conditions which tended to distract attention from a change in the floor level, the fact that the customer's attention was actually distracted does not prove contributory negligence. It merely establishes that the storekeeper's negligence was the proximate cause of the accident. Stated differently, the jury having apparently found respondent negligent in maintaining deceptive conditions adjacent to the ramp, it is not for the court to say that appellant was contributorily negligent in being thus deceived.

■ It is also argued that appellant should have been aware of the ramp at the time of the accident, because she had ascended the same ramp only a few minutes earlier.

*Simpson v. Doe, supra*, was a somewhat similar "retracing" case. We there held that whether or not a person should be chargeable with remembering a particular hazard of this kind depends upon many factors which can ordinarily be evaluated only by the triers of facts. See, also, *McStay v. Citizens' Nat. Trust & Sav. Bank*, 5 Cal. App. (2d) 595, 43 P. (2d) 560. We are inclined to say here, as we did in *Simpson*, that the opportunities for distraction, the length of time elapsing before the way is retraced, and the peculiarities of construction, furnishings and light, all must be considered and presumably were considered, by the jury.

The trial court therefore erred in holding that appellant was contributorily negligent as a matter of law.

The judgment is reversed, and the cause remanded with directions to enter judgment in accordance with the verdict of the jury.

GRADY, C. J., SCHWELLENBACH, DONWORTH, and FINLEY, JJ., concur.

