[No. 35171. Department Two. September 15, 1960.]

SEBORN W. HAMMER, *Respondent*, v. BERTHA I. HAGGARD, *Appellant*.[1]

[1]Reported in 355 P. (2d) 334.

*Donald E. Spickard* and *Carl P. Zapp*, for appellant.

*Clay Nixon* and *James V. O'Conner*, for respondent.

HILL, J.—This is an action for personal injuries, based on the failure of an employer to provide a safe place for an employee to work. The customary defenses, contributory negligence and assumption of risk, were interposed.

The accompanying picture explains more effectively than a thousand words the situation with which we are concerned. A few words, however, are still necessary. What is pictured is a balcony some eight feet, ten inches above the concrete floor of the basement of an undertaking establishment. On either side of the securely-fastened, five-board walkway (referred to as a "catwalk" in the testimony), in the center of the picture, caskets are stored. The open spaces, between the joists on either side of the walkway, are covered with loose boards which are moved about as circumstances may require to support the caskets or to give access to them.

The plaintiff, the sales manager, was taking an inventory of caskets on hand at the end of the year; and, as another employee was hauling a casket on a "dolly" along the walkway, the plaintiff was following along behind. The employee pulling the "dolly" turned left, where the railing shows at the left rear of the picture, and the plaintiff somehow slipped into the hole marked with an "X" and fell to the concrete floor below, sustaining serious injuries.

That this was an unsafe place in which to work is patent. The plaintiff had been employed there for fifteen years, and had been on the pictured portion of the balcony many times, but perhaps not for six months prior to the day he was injured.

The jury, awarded the plaintiff .forty-five thousand dollars; and, from the judgment entered on the verdict, the defendant appeals; asking, first, for a dismissal of the action because the plaintiff assumed the risk; and, in the alternative, for a new trial because of erroneous instructions and excessive damages.

Both sides made extremely able jury arguments to this court on the assumption of risk. Had we been jurors, we might well have been persuaded by the appellant's argument on the assumption of risk; the dangers were seemingly open and apparent.

The trial court permitted the case to go the jury on the basis of the plaintiff's testimony: that every time he

had been upon the balcony the hole, through which he fell, was at least partially covered by a board. We agree that with that testimony in the record it cannot be said, as a matter of law, that the plaintiff assumed the risk. The trial court properly denied the defendant's motion for a judgment notwithstanding the verdict.

 Two instructions were assigned as error. By instruction No. 10, the jury was told:

". . . reasonable care does not require one who was working or walking in a place provided for that purpose to keep his eyes riveted to the floor immediately in front of his feet."

Such an instruction is appropriate under ordinary circumstances: on a crosswalk (*Hines v. Neuner* (1953), 42 Wn. (2d) 116, 253 P. (2d) 945); a sidewalk (*Blasick v. Yakima* (1954), 45 Wn. (2d) 309, 274 P. (2d) 122, and *James v. Burchett* (1942), 15 Wn. (2d) 119, 129 P. (2d) 790); a store aisle (*Watson v. Zimmerman* (1933), 175 Wash. 410, 27 P. (2d) 707); a restaurant aisle (*Smith v. Manning's, Inc.* (1942), 13 Wn. (2d) 573, 126 P. (2d) 44); a theatre lobby (*Griffin v. Cascade Theatres Corp.* (1941), 10 Wn. (2d) 574, 117 P. (2d) 651); a theatre lounge (*Simpson v. Doe* (1952), 39 Wn. (2d) 934, 239 P. (2d) 1051); or a store ramp (*Wardhaugh v. Weisfield's, Inc.* (1953), 43 Wn. (2d) 865, 264 P. (2d) 870).

In all of these cases the plaintiff had a right to assume that where he or she was walking was in a reasonably safe condition for travel and could act accordingly.

But it is error to give such an instruction, where danger is apparent on either side of a narrow walkway, and where it is obviously important that a person know where he is placing his feet if he steps off the walkway. Under the conditions here, the instruction was inappropriate and prejudicial.

This instruction exemplifies the common fault of taking language from an opinion, disregarding the context or the conditions under which it was used, and utilizing it as a statement of the law in an entirely different type of case.

A survey of the cases, where we have used the language of the instruction, makes this abundantly clear.

In *Watson v. Zimmerman, supra,* the plaintiff, a customer, slipped and fell on oil left on the floor of a grocery store. We said (p. 412),

". . . The presence of the oil was not challenging enough to attract her attention to it. She was not required to keep her eyes on the floor at every step in her progress toward the front entrance." (We reversed a dismissal at the conclusion of the plaintiff's case.)

In *Griffin v. Cascade Theatres Corp., supra,* the plaintiff tripped upon an advertising sign which projected over a rubber mat approximately nine feet long and thirty-one inches wide, extending from the sidewalk to the door of a theatre and extending across what is referred to as a brilliantly lighted "open, outer lobby." We said (p. 583),

". . . She was justified in assuming that she might safely walk upon the mat, and the obstruction of it, under the circumstances, was not so obvious as to challenge her attention. It was not incumbent upon her to watch her footing every step of the way. . . ." (Verdict for plaintiffs. Trial court granted defendant judgment n.o.v. We reversed and ordered a new trial.)

In *Smith v. Manning's, Inc., supra,* the plaintiff slipped on a piece of pickle on the floor of a cafeteria aisle. Criticizing an instruction, which had stated that (p. 577) " 'A person *will be deemed to have actually seen what could have been seen, if she had looked,'* " we said (pp. 578, 579),

". . . The principle that one will be deemed to have actually seen what could have been seen had he looked is applicable where there is a positive duty to look, as in the case of a disfavored driver entering a street intersection, or where one is about to traverse a place of known danger, or the danger is so clearly apparent that it could not escape the attention of a reasonably prudent person. The principle is not germane in the instant case, *because it was not appellant's duty to keep her eyes constantly riveted to the floor as she walked along the aisle provided for her use, nor can it be said that the danger was so obvious that, in the exercise of due care, she must have seen it.* She testified that she first noticed the litter on the floor after she had

fallen. *The condition was not so conspicuous as necessarily to challenge her attention prior to that time, and it was not incumbent upon her to watch her footing every step of the way.* . . . [Italics ours.]

"The objectionable portions of instruction No. 9 seem to have been taken largely from *Johnson v. Washington Route*, 121 Wash. 608, 209 Pac. 1100. It was said there that the law requires a person to use his faculties so as to avoid danger, if he can reasonably do so, and that 'a person will be deemed to have actually seen what he could have seen if he had looked.' That case will serve as a good example of a situation in which the quoted principle is applicable. The plaintiff, in an action for personal injuries, had been a passenger on defendant's passenger steamer. When it docked at Bremerton, a gangplank was placed so as to extend from the boat to the wharf. The outer end of the plank was about twenty-four inches above the floor of the dock. Although it was a clear day, and there was nothing to obstruct her vision or distract her attention, the plaintiff walked off the end of the gangway and fell to the dock. She testified that she thought there was a step at the end of the plank, but, in the words of the opinion, 'She did not look to see if there were such a step, but walked off the gangplank without using her faculties. . . .' This court concluded that the plaintiff had been guilty of contributory negligence as a matter of law and affirmed the lower court's judgment of dismissal entered after the granting of defendant's motion for nonsuit.

"Manifestly, we have an entirely different factual situation here. . . ."

(We granted a new trial to the plaintiff in the *Manning's* case, because of the instruction criticized. The case is important as indicating most clearly, by its contrast with *Johnson v. Washington Route, supra,* the particular situation which warrants an instruction of the type which we hold it was error to give in the present case.)

In *Simpson v. Doe, supra,* the plaintiff fell in the dimly lighted ladies' lounge of a theatre, not because of a slippery or defective condition, but because of a deceptive appearance; she was not aware of the fact that there was a step down from the toilet room into the lounge. We there said (p. 937),

". . . Where the existence of deceptive conditions as to the presence of a hazard or danger is thus established,

this in itself tends to negative a claim that one who is, in fact, deceived by such conditions, is guilty of contributory negligence.

". . . Where there is no reason to anticipate a hazard, reasonable care does not require one who is walking in a place provided for the purpose to keep his eyes riveted to the floor immediately in front of his feet. . . ."
(We affirmed a judgment for the plaintiff; but emphasized that in another "step" situation, such as in *Viles v. Thunborg* (1931), 164 Wash. 190, 2 P. (2d) 666, the plaintiff had the duty to proceed with great caution.)

In *Hines v. Neuner, supra,* the plaintiff, crossing a street in a crosswalk, fell over a tow rope which extended across the crosswalk at a height of two or two and one-half feet above the street. We quoted extensively from *Smith v. Manning's, Inc., supra* (as we have done in this case), and also used the same quotations from *Griffin v. Cascade Theatres Corp., supra,* and *Simpson v. Doe, supra.* Again, we emphasized that the plaintiff was walking where it was expected she would walk, and where there was no reason to anticipate such a hazard as there existed; and we said (p. 126), "that one is not bound, in all cases, to pay absolute heed to his surroundings," and that,

". . . To hold, in such circumstances, that the plaintiff was bound to keep his eyes fixed to the ground ahead of him and thereby discover a tow rope which obstructed the crosswalk—especially when it was highly unlikely that such an obstruction would be there—would impose a most severe and onerous duty on appellant. . . ."
(We reversed a judgment in favor of the defendants in that case because the instructions given placed too great a burden on the plaintiff.)

From the foregoing examination of the cases, in which we have used the exact language or its substance which was used in the instruction now under consideration, it is clear that the plaintiff was, in each instance, walking where it was intended he should walk, where the danger was not sufficiently obvious to challenge his attention, and where he had a right to assume it was safe for him to walk. Had the plaintiff, here, fallen through a hole in the walk-

way where it was intended he should walk, the instruction would have been proper.

The plaintiff's attention should have been challenged by the obviously dangerous situation that existed on either side of the walkway. Contrary to the instruction given, if his work or his walking took him off the walkway, he was obligated to give some attention to where he was going.

■■■ By instruction No. 11, the jury was told:

". . . If because of age, or lack of information or experience, he does not comprehend the risk involved in a known situation, he will not be taken to consent to assume it."

The plaintiff was seventy years of age, but there was absolutely nothing in the record that would indicate that either age or lack of experience made it more difficult for him to comprehend the risk involved. We think the sentence quoted was erroneous, but whether it was actually prejudicial we have some doubt; however, it should not be repeated in the event of a retrial.

Having determined that a new trial is required, because of the quoted portion of instruction No. 10, it is unnecessary to discuss the other assignments of error.

The judgment, on the verdict, is set aside; and the cause is remanded for a new trial. Costs to abide the final result of this action.

WEAVER, C. J., FINLEY, ROSELLINI, and FOSTER, JJ., concur.